ace

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KARLA SATTERLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       Case No. 05-4022-JAR |
| | ) |
| ALLEN PRESS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on defendant Allen Press, Inc.'s Motion for Summary

Judgment (Doc. 33).  In this action, plaintiff, Karla Satterlee, brings five claims against her

former employer: (1) retaliatory discharge for exercising rights under the Kansas Workers'

Compensation Act; (2) retaliatory refusal to reinstate for exercising rights under the Kansas

Workers' Compensation Act; (3)  interference under the Family and Medical Leave Act

("FMLA"); (4) retaliation under the FMLA; and (5) refusal to restore plaintiff to work under the

FMLA.  The Court has considered the arguments set forth in the parties' briefs along with the

record submitted and is now prepared to rule.  For the reasons stated below, the Court grants

defendant's motion for summary judgment.

### I.       Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most

favorable to plaintiff.  Defendant is a printer that distributes original research and magazines

largely in the scientific, technical, medical and academic market.  Defendant hired plaintiff as a

bindery employee on April 23, 2001.  Plaintiff's job duties included stacking books or journals.

In mid-October 2001, plaintiff injured her right wrist.  Plaintiff underwent surgery in mid-

November 2001; she did not work for one week when she had this surgery.  When plaintiff

returned to work after her surgery, on or about November 12, 2001, she was transferred from the

bindery to an office position in defendant's Association Management ("AM&M") department

where plaintiff was supervised by Tom MacEwan.

        In December 2001, plaintiff injured her left wrist.  At the end of December or first of

January 2002, plaintiff spoke to Martha Murphy, defendant's Human Resources Director, about

her condition.  Plaintiff went to see a doctor about her injury, and was later referred to another

doctor.  When this second doctor suggested surgery, plaintiff went to see Dr. William Reed to

obtain another opinion.  Dr. Reed determined that plaintiff's condition was not a surgical

emergency; therefore, he tried some conservative care such as steroid injections before resorting

to surgery.  After months of treatment with Dr. Reed, plaintiff eventually scheduled surgery on

her left wrist in late March 2003.  Plaintiff's left and right wrist injuries were handled under the

same workers' compensation claim.

        In 2003, Theresa Pickel was the director of defendant's AM&M department.  In February

2003, after discussing with employees the workload assignments in the department and

determining the impact of job eliminations to that department, Pickel decided to eliminate five

positions from the AM&M department.  Pickel eliminated two positions in the job works

department, two positions on the processing support staff team, and one position in the mail

room.

        On February 28, 2003, defendant laid off four employees, including plaintiff, and another

2

employee retired.  Pickel testified that she included plaintiff in the lay offs because plaintiff was not able to learn readily the other tasks that needed completion, there were already other employees who were trained to complete such tasks, and plaintiff had lower job performance ratings than fellow coworkers.  Additionally, during the last year of plaintiff's employment, the AM&M department was in a transition of switching to a new electronic database system called TIMSS.  Pickel testified that part of plaintiff's job duties were eliminated with the implementation of TIMSS.

Pickel stated that employees who survived the job eliminations had been employed by defendant for some time, could perform all the required tasks, and were able to complete other tasks around the plant.  Plaintiff testified that she determined which employees had the higher skill sets.  The employees that were the most versatile and productive were not laid off from their employment.

Defendant has a policy of evaluating the performance of its employees on at least an annual basis.  The employee's direct supervisor conducts the performance appraisal and gives the employee a performance rating on a scale of 500 points.  One of the employees that remained after the lay offs had earned 497 points on her last appraisal. Another retained employee had earned 490 points on her last evaluation.[1]

Of the three other employees that were laid off along with plaintiff in February 2003, one had earned 457 points in her last evaluation, another had earned 396.5 points, and the other had earned 371 points.  Plaintiff earned 381.4 performance points in her last evaluation, making her rating the second lowest among the group of employees that lost their jobs.

---

[1]The Court notes that this particular employee, before the layoffs occurred, was approved for FMLA leave after following defendant's company policy.

Further, Pickel testified that she received complaints from other employees about the quality and accuracy of plaintiff's work.  Managers told Pickel that they felt like they had to check plaintiff's work for errors.

Pickel testified that it was her decision to lay off plaintiff.  MacEwan and Murphy both testified that they did not participate in the decision to terminate plaintiff's employment.[2]  Pickel also testified that she did not know that plaintiff was about to have surgery on her left wrist or that plaintiff had requested leave for a work-related injury before plaintiff's termination.

When plaintiff had learned she would need time off from work for surgery to her left wrist, she orally informed her supervisor, Tom MacEwan; but she never notified anyone in defendant's Human Resources department regarding her need for time off for her left wrist surgery.  Plaintiff's only conversation with Human Resources regarding her left wrist injury occurred when plaintiff spoke with Murphy at the end of December 2001 or beginning of

---

[2]Plaintiff controverts the fact that Murphy did not participate in the decision to terminate plaintiff by referring the Court to plaintiff's Statement of Facts ¶ 38.  In this paragraph, plaintiff contends that Pickel testified that Murphy was involved in the decision-making process to fire plaintiff.  She further contends that Murphy was present as the company representative during Pickel's deposition and upon hearing Pickel's testimony, Murphy "lip talked" to Pickel telling her that she was not involved.  (Doc. 41 at 11.)  To support this Statement of Fact, plaintiff cities Murphy's deposition testimony at pages 186 to 190.  The Court notes that pages 186 to 188 of Murphy's deposition testimony are not part of the record.  The remaining pages of deposition testimony are part of the record as defendant attached these pages to support its motion for summary judgment.   Plaintiff did not attach any supporting documents to her memorandum in opposition to defendant's motion.  Fed. R. Civ. P. 56(e) requires that the adverse party's response "must set forth specific facts showing that there is a genuine issue for trial."  D. Kan. R. 56. 1(d) requires that if reference is made to a fact in a deposition, the party asserting that fact must attach a copy of the relevant excerpt to the memorandum.  Here, plaintiff has failed to do so.

Nevertheless, the Court has throughly reviewed the record before it.  The Court notes that in Pickel's deposition, she was asked who participated in the decision-making process to fire Ms. Satterlee, and Pickel responded that she did along with Murphy.  (Pickel Depo. at 178:1–6.)  However, Pickel went on to clarify that she arrived at the decision to eliminate the positions, and upon making this decision, she coordinated the eliminations with Murphy in the Human Resources Department.  (Pickel Depo. 178:9–179:13.)  Based on the record before the Court, plaintiff has failed to controvert the fact that Pickel, alone, made the decision to eliminate plaintiff's position.

January 2002 about her condition and her need for medical attention.[3]

MacEwan first told Pickel in an email dated February 26, 2003, that plaintiff would be off for a period of time due to her wrist surgery and discussed options for having other employees cover her work.  MacEwan testified that he did not know at that time exactly when or how long plaintiff would be gone from work.  Pickel testified, though, that the decision to terminate plaintiff's employment had already been made on February 25, 2003, before Pickel received MacEwan's email.  In fact, Pickel testified that she met with Murphy on February 25, the day before MacEwan's email,  to discuss how the terminations would take place on February 28.

Plaintiff was absent from work on February 28, the day she was terminated.   For on February 25, 2003, plaintiff had surgery on her nose to correct a deviated septum.  Plaintiff told only MacEwan about her scheduled nasal surgery, and that she would be off from February 25 through February 28, 2003.  Plaintiff testified that she did not recall filling out leave of absence forms for her nasal surgery.  And, Defendant has no record that plaintiff took these days off of work, nor does it have any leave of absence forms requesting FMLA leave or medical certifications for her nasal or wrist surgeries.  Yet these forms are required for taking FMLA leave.  Furthermore, Dr. Reed testified that he did not recall having any discussions with plaintiff about whether she would need leave under the FMLA for her wrist surgery, and he has no record

---

[3]Plaintiff contends that defendant knew about the wrist surgery scheduled in March because defendant's safety coordinator received a letter from the insurance company dated January 13, 2003 that stated that plaintiff's surgery was scheduled for mid-March because she was having nasal surgery in February 2003.  To support this contention, plaintiff refers the Court to pages of Murphy's deposition testimony that are not part of the record because plaintiff failed to attached supporting documents to her memorandum in opposition to plaintiff's motion. Since the Court is unable to locate the cited testimony, plaintiff has failed to controvert Murphy's contention that she did not know about plaintiff's left wrist surgery.

of plaintiff requesting any FMLA paperwork.

Plaintiff signed for and received a copy of defendant's employee handbook upon her hiring.  Plaintiff testified that she understood the process for taking leave time from her employment.  This process required an employee fill out a form requesting time off, give the completed form to a supervisor, and then the form would be forwarded to the Human Resources Department.  Plaintiff also testified that she was aware of the section in the employee handbook describing the process an employee should take to request leave under the FMLA.  Specifically, the defendant's employee handbook provides:

**Leave for Employee's Serious Health Condition**
If you request a leave of absence for your own serious health condition, you will be granted leave under the following conditions:
1.  If the leave is planned in advance, you must provide us with at least thirty days' notice prior to the anticipated leave date, using Allen Press, Inc.'s official Leave of-Absence Form.
2. If the leave is unexpected, you should notify your supervisor and the Human Resources Department by filing the Leave-of-Absence Request Form as far in advance of the anticipated leave date as is practicable. (Normally, this should be within two business days of when you become aware of your need for the leave.)
3. Any time that you expect to be or are absent for more than three consecutive work days as a result of your own serious health condition (including pregnancy), you will be required to submit appropriate medical certification from your physician.  Such certification must include at a minimum, the date the disability began, a diagnosis, and the probable date of your return to work.

 During her employment with defendant, plaintiff filled out various Leave-of-Absence Request Forms.  Defendant's leave form includes blank spaces in which an employee can check the reason he or she is asking for leave.  One of these blank spaces is titled "FMLA."  Plaintiff never requested FMLA leave by checking this blank space and submitting one of these forms.  Further, plaintiff never submitted medical certifications from her physician.

After plaintiff's termination, in August 2003, MacEwan participated in the drafting of a

job description for an administrative support specialist position.  This new position was created

after defendant implemented the TIMSS system, which had eliminated part of plaintiff's former

job responsibilities.  MacEwan testified that the job description of this position was revised to

expand the scope of responsibilities, meaning that a single employee would be required to do

many more tasks than he or she had in the past.  MacEwan further stated that the company hoped

to give employees more responsibilities so that the company could cross-train and employ

people with experience in various tasks and functions.  Defendant posted the revised

administrative support specialist position in September 2003.  Plaintiff applied for the position,

but she was not considered.  MacEwan testified that plaintiff was not capable of holding this

position because the payment processing portion of the duties on the new job required a high

level of attention to detail and more computer savvy than plaintiff possessed.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[4]  A fact is only material under this standard if a dispute over it would affect the outcome

of the suit.[5]  An issue is only genuine if it "is such that a reasonable jury could return a verdict

for the nonmoving party."[6]  The inquiry essentially determines if there is a need for trial, or

---

[4]Fed. R. Civ. P. 56(c).

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6]*Id.*

7

whether the evidence "is so one-sided that one party must prevail as a matter of law."[7]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[8] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[9] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[10] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[12]

## III.    Discussion

### A.    FMLA Claims

Under the FMLA, an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee

---

[7]*Id.* at 251–52.

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[10]*Id.*

[11]*Id.*

[12]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

unable to perform the functions of the position of such employee."[13]  Plaintiff asserts her FMLA

claims using three theories: (1) interference under § 2615(a)(1) of the FMLA, (2) relation under

§ 2615(a)(2) of the FMLA, and (3) restoration under § 2614(a)(1) of the FMLA.  The Court

discusses each in turn.

### 1. Interference

To assert a claim for interference, plaintiff has the burden to show entitlement to FMLA

leave, but need not show the employer's intent to interfere with FMLA leave.[14]  Under the

interference theory, if an employer interferes with an employee's FMLA-created right to a

medical leave, it has violated the FMLA, regardless of its intent.[15]  In such a case, the employee

must demonstrate her entitlement to the disputed leave.[16]  The intent of the employer is

immaterial.[17]

Thus, a *prima facie* case under an interference theory requires a showing of FMLA leave

entitlement, a denial of substantive rights under the FMLA, and a causal connection between the

two.[18]  Nonetheless, even when an employee requests and can demonstrate an entitlement to

FMLA leave, she has no greater rights than the employee who continues to report to work.[19]

Thus, an employee may be terminated, even where the termination interferes with her ability to

---

[13]29 U.S.C. § 2612(a)(1)(D).

[14]*See* 29 U.S.C. § 2612(a)(1)(D).

[15]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[16]*Id.*

[17]*Id.*

[18]*Dry v. The Boeing Co.*, No. 01-3294, 2004 WL 309323, at *3 (10th Cir. Feb. 19, 2004) (citation omitted).

[19]*See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

take FMLA leave, so long as she would have been terminated regardless of her leave request.[20]

Defendant argues that plaintiff is not entitled to FMLA leave because she failed to give her employer notice.  "The analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA rights."[21]  An employee should give notice to the employer of the need for FMLA leave within thirty days if the need for leave is foreseeable, or as soon as practicable if the need for leave is unforeseeable.[22]  However, the FMLA does not require a covered employee to specifically ask for FMLA benefits.[23]  In fact, an employee need not expressly assert rights under the FMLA or even mention the FMLA.[24]  "If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply."[25]

In *Bones v. Honeywell International, Inc.*, the district court concluded that plaintiff failed to provide proper notice for leave under the FMLA when she reported her need for leave to the employer's medical department rather than to her supervisor as required by the employer's

---

[20]*See id.*

[21]*Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960–61 (10th Cir. 2002) (notice not part of the analysis set out by the court for determining interference with one's FMLA rights); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001) (court assumed employee proffered adequate notice to invoke FMLA protection, then proceeded to analyze substantive FMLA interference claim)).

[22]29 C.F.R. §§ 825.302(a), 825.303(a).

[23]*Tate v. Farmland Indust., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001).

[24]*Id.* (citing 29 C.F.R. §§ 825.302(c), 825.303(b); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761–64 (5th Cir. 1995)).

[25]*Id.* (citing 29 C.F.R. § 825.208(a)).

10

policy.[26]  The facts of this case are the reverse situation.  While plaintiff told her supervisor, MacEwan, that she would be absent from work due to her nasal surgery, she never provided notice of her nasal procedure to anyone in the Human Resources Department.  Under defendant's leave policy, plaintiff was required to fill out a leave of absence form and submit it to Human Resources.  Plaintiff testified that she did not recall filling out such a form, and defendant does not have any leave of absence forms requesting FMLA leave.  In fact, defendant has no record that plaintiff took these days off of work at all.  Additionally, plaintiff never provided a medical certification for her nasal surgery as required under defendant's policy for taking FMLA leave.

The same situation is true regarding plaintiff's surgery for her left wrist.  There is no evidence in the record that plaintiff apprised defendant of her need for FMLA leave.  While plaintiff mentioned an upcoming surgery to MacEwan, he testified that she did not tell him exactly when or how long plaintiff would take leave.  Plaintiff spoke with Murphy about her wrist condition in late 2001 or early 2002, but she never notified anyone within Human Resources that she needed to take time off for her wrist surgery.  Further, plaintiff never filled out any paperwork or submitted any information to defendant, such as a medical certification, regarding her need for FMLA leave as defendant requires in its employee handbook.

Even if the Court were to assume that plaintiff was entitled to FMLA protection, plaintiff's interference claim would still fail because she cannot demonstrate a casual connection between her leave and her termination.  Defendant has established that plaintiff would have been dismissed regardless of her FMLA claim.  "A reason for dismissal that is unrelated to a request

---

[26]*Bones v. Honeywell Intern., Inc.*, 223 F. Supp. 2d 1203, 1215–17 (D. Kan. 2002), *aff'd* 366 F.3d 869, 877 (10th Cir. 2004).  The Court notes, however, that on appeal, plaintiff abandoned the issue of whether she gave proper notice.

for an FMLA leave will not support recovery under an interference theory."[27]  Pickel testified

that plaintiff was terminated from her position because she had decided to eliminate five

positions in plaintiff's department.  Pickel included plaintiff in the lay offs because she was not

readily able to learn new tasks, other employees had complained about plaintiff's job

performance, and plaintiff had earned lower job performance ratings than fellow coworkers.  The

uncontroverted evidence shows that defendant retained employees that Pickel thought were more

versatile, more productive, and had earned higher job performance ratings than plaintiff.  Pickel

also noted that part of plaintiff's job responsibilities had been eliminated with the

implementation of the TIMSS system.  Pickel further testified that she was unaware that plaintiff

was on leave for her nasal surgery or that she was anticipating surgery to her left wrist until she

had already made the decision to terminate plaintiff's employment.  Plaintiff has failed to bring

forth any evidence, besides speculation, that contradicts Pickel's testimony.  It was not unlawful

for defendant to terminate plaintiff even though the termination interfered with her ability to take

leave because she would have been terminated in any event when defendant eliminated five

positions in plaintiff's department.[28]  Despite construing the evidence in the light most favorable

to plaintiff, the Court is unable to conclude a genuine issue of material fact exists to support her

claim.  Therefore, summary judgment must be granted in favor of defendant with respect to

plaintiff's interference claim under the FMLA.

---

[27] *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 877–78 (10th Cir. 2004) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002) (an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) (to withstand summary judgment on an interference theory, an employee's termination must have been related to her request for an FMLA leave)).

[28] *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

### 2.      Retaliation

When analyzing FMLA discrimination/retaliation claims under 29 U.S.C. § 2615(a)(2),

courts apply the *McDonnell Douglas*[29] burden shifting approach.[30]  Under that approach, a

plaintiff's establishment of a *prima facie* case creates a presumption of retaliation.  The burden

then shifts to the defendant to produce evidence that the adverse employment action was taken

for a legitimate, nondiscriminatory reason.[31]  If the defendant meets this burden, the burden then

shifts back to the plaintiff to present evidence that the proffered reason was not the true reason

for the employment decision.[32]

In order to establish a *prima facie* case of FMLA retaliation/discrimination, plaintiff must

demonstrate that "(1) she availed herself of a protected right under the FMLA; (2) she was

adversely affected by an employment decision; and (3) there is a causal connection between the

two actions."[33]  In this case, plaintiff cannot establish a *prima facie* case because, as explained

above, plaintiff cannot demonstrate a casual connection between her leave and her termination.

Even assuming that plaintiff could establish a *prima facie* case of retaliation, she cannot

prove that defendant's proffered reason for her termination is pretextual.  "A plaintiff may show

pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could rationally find them unworthy of credence and hence infer that the employer did

---

[29]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

[30]*See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[31]*See id*.

[32]*Id*.

[33]*Id*. at 1325.

not act for the asserted non-discriminatory reasons.'"[34]  "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."[35]  Here, the record clearly shows that defendant decided to eliminate five positions from the AM&M department and to terminate the employment of workers based on their versatility and performance in the work place.  The uncontroverted evidence shows that plaintiff was included in this group because she was not able to learn new tasks, other employees had complained about her job performance, and she had earned lower job performance ratings than fellow coworkers.  Plaintiff has failed to show any inconsistencies or contradictions in defendant's proffered reason.  There is no evidence to support plaintiff's claim that defendant eliminated five positions and terminated four employees for the purpose of retaliating against plaintiff.  The evidence overwhelmingly supports defendant's proffered reason, and thus the Court concludes there is no genuine issue of material fact to support plaintiff's retaliation claim.  Summary judgment is granted with respect to this claim as well.

### 3.    Restoration

The FMLA requires that an employer restore an employee returning from FMLA leave to the same or equivalent position held by the employee before taking such leave.[36]  However, the restored employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not

---

[34]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[35]*Id.*

[36]28 U.S.C. § 2614(a)(1).

taken the leave."[37]

Defendant argues that plaintiff is not entitled to restoration because she was not terminated while she was taking FMLA leave.  When plaintiff was terminated, she was at home recovering from her nasal surgery.  Plaintiff told MacEwan about her scheduled nasal surgery, but she never requested FMLA leave from her employer.  Plaintiff did not recall filling out leave of absence forms for her nasal surgery.  The uncontroverted evidence shows that defendant has no record that plaintiff took these days off of work.  Defendant also does not have any leave of absence forms requesting FMLA leave or medical certifications, required for taking FMLA leave, for plaintiff's nose procedure.  Thus, the Court finds that no reasonable jury could conclude that plaintiff was on FMLA leave at the time of her termination.

Additionally, even if plaintiff was taking FMLA leave at the time of her termination, she would have no greater rights than the other three employees who were terminated on February 28, 2003.[38]  In *Vargas v. Globetrotters Engin. Corp.*,[39] plaintiff brought an FMLA restoration claim against her former employer for terminating her employment while she was on maternity leave.  In that case, plaintiff's position had been eliminated when the project for which she was working ended.[40]  When plaintiff sought to return from leave, there were no openings available in her position.[41]  Thus, the court concluded that plaintiff would have been terminated regardless

---

[37]§ 2614(1)(3)(b).

[38]*See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002) (citing *Renaud v. Wy. Dep't of Family Servs.*, 203 F.3d 723, 732 (10th Cir. 2000)).

[39]4 F. Supp. 2d 780 (N.D. Ill. 1998).

[40]*Id.* at 783.

[41]*Id.*

of her maternity leave, and therefore, plaintiff had no right to restoration.[42]

Likewise, plaintiff's position was eliminated when she was out of the office for nasal surgery.  When plaintiff sought to return from leave, her position, along with the positions of four other employees, had been terminated.  Defendant has shown that plaintiff would have been terminated regardless of her leave because Pickel made the decision to terminate plaintiff without knowledge that she was having nasal surgery and with the knowledge that plaintiff's job performance was less satisfactory than her coworkers.  Even if plaintiff was on FMLA leave at the time of her termination, she is not entitled to greater rights or benefits than her three coworkers who were also terminated on February 28.  Thus, plaintiff had no right to restoration after her nasal surgery.

Plaintiff also contends that she was entitled to restoration when defendant sought to hire an administrative support specialist in September 2003.  For the same reasons stated above, plaintiff was not entitled to restoration because her job position had been eliminated.  The uncontroverted evidence shows that the job posting in September 2003 was not the same job that plaintiff had held during her employment with defendant.  MacEwan testified that he revised the job description for administrative support specialist to expand the scope of responsibilities, meaning that a single employee would be able to do many more tasks than he or she had in the past.  He testified that plaintiff was not qualified for this position as the job included different tasks than plaintiff had completed during her employment and required more computer savvy

---

[42]*Id.*  The court went on to deny defendant's summary judgment motion, however, because plaintiff raised a genuine issue of material fact as to whether there was an equivalent position in which defendant was obligated to restore plaintiff.  To the extent plaintiff is attempting to raise such an argument in this case, she has provided no evidence that her former position in the bindery was an open and available position to which she could have been transferred in February 2003.

than plaintiff possessed.  Therefore, even if plaintiff had been on FMLA leave, she was not

entitled to restoration because her position had been eliminated within the AM&M department.

Defendant's motion for summary judgment is granted with respect to this claim as well.

### B.    State Law Claims

Defendant further argues that it is entitled to summary judgment because plaintiff has

failed to demonstrate a genuine issue of fact with regard to her state law claims under the Kansas

Workers' Compensation Act.  Plaintiff filed this action invoking the Court's federal question

jurisdiction and supplemental jurisdiction over plaintiff's state law claims.  Because the Court

grants summary judgment in favor of defendant on plaintiff's federal claims, the Court may

decline supplemental jurisdiction over the remaining state law claims.[43]  Whether to exercise

supplemental jurisdiction is committed to the court's sound discretion.[44]  28 U.S.C. § 1367

"reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a

federal court should consider and weigh in each case, and at every stage of the litigation, the

values of judicial economy, convenience, fairness and comity.'"[45]

Upon a pretrial disposition of the federal claims, district courts will generally dismiss the

state law claims without prejudice.[46]  This general practice is in keeping with the holdings of the

---

[43] 28 U.S.C. § 1367(c)(3).

[44] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[45] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Commr's*, 365 F.3d 855 (10th Cir. 2004).

[46] *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (collecting cases); *see also Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

Supreme Court and the Tenth Circuit.[47]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[48]  Here, there are no compelling reasons for this federal court to try plaintiff's state law claims.

Additionally, there is a compelling reason for this Court to defer the resolution of plaintiff's workers' compensation claims to the Kansas state courts.  Plaintiff has brought a claim for retaliatory failure to rehire, reinstate, or hire for filing a workers' compensation claim. Defendant counters that Kansas law does not recognize such a claim.  The Court has throughly researched Kansas case law, and has found no case in which a Kansas court has recognized a claim for retaliatory failure to rehire.  Plaintiff urges the Court to recognize such a cause of action by citing to Kansas cases that have extended the tort of retaliatory discharge to include other factual scenarios.[49]  However, it is the judicial policy of the Tenth Circuit that matters of state law should first be decided by state courts.[50]  This Court is not in a position to expand Kansas law to include plaintiff's claim, and will therefore decline supplemental jurisdiction over this claim.

---

[47]  *Ball*, 54 F.3d at 669.

[48]  *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[49]*See Gonzalez-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility*, 101 P.3d 1170 (Kan. 2005) (holding that plaintiff, who worked two jobs, could maintain a retaliation claim against his employer who was not the employer against which he had a filed a workers' compensation claim); *Brigham v. Dillon Co.*, 935 P.2d 1054 (Kan. 1997) (allowing plaintiff to bring claim for retaliatory demotion); *Marinhagen v. Boster, Inc.*, 840 P.2d 534 (Kan. 1992) (recognizing retaliation claim brought by noninjured spouse of an employee who exercised his or her workers' compensation rights); *Pilcher v. Bd. of Wyandotte County Comm'rs*, 787 P.2d 1204 (Kan. App. 1990) (recognizing retaliation claim where plaintiff had not filed workers' compensation claim but absences due to work-related injury might form basis of future claim).

[50]*Delaney v. Cade*, 986 F.2d 387, 391 (10th Cir. 1993); *see also Haas v. Famers Ins. Group*, 930 F.2d 33, 1991 WL 49768, at *2 (10th Cir. Mar. 29, 1991) (unpublished table opinion) (stating that the court did not have authority to confer or create a cause of action under state law where none exists.  Further, the court "cannot, and will not, guess or speculate on whether [a state court] will subsequently adopt or create such a cause of action.").

Further, plaintiffs are free to pursue their claims in a Kansas court because even if the statute of limitations would otherwise have run, 28 U.S.C. § 1367(d) tolls the statute of limitations during the time the claim is pending and affords them at least 30 days from a current federal court dismissal to commence a new action in the state court.[51]  In this case, because discovery is complete, the Court conditions dismissal on use of all discovery in any subsequently filed state court case.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED** with respect to plaintiff's FMLA claims.

**IT IS FURTHER ORDERED** that because the Court declines to exercise supplemental jurisdiction in this case, plaintiff's state law claims are dismissed without prejudice.

**IT IS SO ORDERED**.

Dated this 31st    day of July 2006.

 S/ Julie A. Robinson                                  
Julie A. Robinson
United States District Judge

---

[51] 28 U.S.C. § 1367(d).  *Cf. Jinks v. Richland County, S.C.*, 538 U.S. 456, 466-67 (2003) ("no constitutional doubt arises from holding that [a] claim against . . . a political subdivision of a State–falls under the definition of 'any claim asserted under subsection (a).'").  Kansas's "saving statute", K.S.A. 60-518, affords a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits."  Examples of such failures include dismissal without prejudice.  *See Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989).  If applicable, this time frame controls over the 30-day tolling period in 28 U.S.C. § 1367(d).